Norah Hart, Esq.
Treuhaft & Zakarin LLP
1011 Avenue of the Americas, 4th Floor
New York New York, 10018
Telephone: (917) 539-6312
Facsimile: (646) 537-2662
ATTORNEY FOR PLAINTIFF CLASS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SEAN MCGINN, individually and on behalf of others similarly situated,

    Plaintiff

vs.

MATCH.COM L.L.P.

    Defendant.

09cv 5328 SWK

COMPLAINT

Plaintiff, SEAN MCGINN, individually and on behalf of all others similarly situated, sues Match.com L.L.P., a Texas corporation, and alleges as follows:

## PARTIES

1. At all times material hereto, Plaintiff, Sean McGinn (hereinafter "McGinn") was and is a permanent resident of Brooklyn, New York, County of Kings.

2. At all times material hereto, Defendant, Match.com, L.L.C. (hereinafter "Match"), is a Texas corporation authorized to do business in Texas, transacting business in Texas and with its corporate headquarters and principal place of business in Dallas, Texas. Match is an operating business of IAC/InterActiveCorp., and has international offices in Beijing, London, Madrid, Munich, Paris, Stockholm and Tokyo.

## JURISDICTION

3. Pursuant to 28 U.S.C. § 1332(d), 1453, and 1711-1715, the Class Action Fairness Act of 2005, this Court has diversity jurisdiction in that there is minimal diversity, such that any plaintiff is a citizen of a different state from any defendant.
4. Pursuant to 28 U.S.C. § 1332(d)(2)(A), this Court has original jurisdiction in that the matter in controversy exceeds the sum or value of $5,000,000.00 exclusive of interests and costs.
5. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction in that this is a civil action arising under the laws of the United States, namely 15 U.S.C. §45(a)(1), the Federal Trade Commission Act, declaring deceptive practices affecting commerce unlawful.
6. Venue is proper in this Court as a substantial part of these events giving rise to the events occurred in New York, New York.

## CLASS ALLEGATIONS

7. Mr. McGinn is a representative Plaintiff on this class action suit in that:
   a. The number of potential Class members is so numerous that joinder of all members is impracticable;
   b. There are questions of law and fact common to each member of the Class;
   c. The claims of Mr. McGinn are typical of the claims of the Class; and
   d. Mr. McGinn will adequately protect the interests of the Class;
8. Mr. McGinn and the Class are adequately represented by counsel filing this Complaint. Counsel has adequate resources and is familiar with the key issues in this type of tort and contract litigation.
9. Mr. McGinn's claim in this lawsuit is typical of the Class in that his damages are those sustained by other members of the Class and suffered by all similarly situated.
10. Pursuant to Federal Rule of Civil procedure 23(b)(3), the general Class is identified as any person within the United States who entered into a contract for the online dating services of Match at any time since April 21, 1995 to the present while the current policies and practices were in use. Upon information and belief there are millions of

subscribers using Match.com.  Match claims to have had over 100 million members since 2000.

11. The prosecution of separate actions by each member of the Class would create risk of inconsistent or varying adjudications resulting in incompatible standards of conduct for the Defendant.
12. The questions of law and fact common to the Class predominate over any questions affecting only individual members.  An action by the Class is superior to other available methods for fair and efficient adjudication of the controversy.
13. The following allegations are applicable to all members of the Class.

## GENERAL ALLEGATIONS

14. Match is the world's biggest online dating service and it advertises in print and via the internet and television nationally and worldwide.
15. Match designs and operates a website that displays profiles of members and transmits communications between members.
16. Match charges subscription fees to members of approximately $39.99 per month.
17. The Match website states, "Over the years, we've learned more and more about what people want - and the tools they need to help take the lottery out of love."
18. Match offers members several ways to contact other members, including winks and e-mail messages.
19. When a Match member has cancelled their subscription, or has had their subscription terminated, they can not respond to contact from other members (i.e. e-mails, winks, etc.) or view the profile of people who contact them.
20. Match lumps together profiles of current subscribers and cancelled members and displays them as if they are the same.
21. Upon information and belief, the majority of Match members are cancelled subscribers or never subscribed at all.
22.
23. When a Match subscriber writes to someone on the site, if that person's subscription has ended, Match declines to inform the writer that the intended recipient can neither read their e-mail nor respond, although Match has the capability to do so.

24. Match misleads paying subscribers by charging them for the ability to write e-mails to members who can't reply to their e-mails or even read them.
25. Match defrauds the consumer of his/her time and personal investment every time a person pays Match's subscription fee and writes to a member who won't have the ability to read what they wrote or see their profile.
26. Match subscribers, like McGinn and other members of the Class, have been defrauded of millions in aggregated fees and compensatory damages because a high percentage of current Match members have cancelled their subscriptions and are not reachable, and Match intentionally conceals that fact from subscribers when they write an e-mail to a cancelled member.
27. Match subscribers pay Match to deliver their e-mails, and Match deliberately does not deliver e-mails in breach of the implied covenant of good faith and fair dealing, and in violation of the Federal Trade Commission Act.
28. Match conceals the fact that there is any difference between members and subscribers, the only mention of the distinction between member and subscriber occurs in the User Agreement, "As a Member, you will have the ability to participate in some, but not all, of the features and services available within the Service. In order to access additional features and services, including the ability to communicate with other Members, you must become a paying subscriber to the service." (page 3, Section 3)
29. When a subscriber cancels their subscription, their profile continues to appear to be that of an active subscriber, nothing indicates to the viewer their limited access to read e-mails or respond to them.
30. The User Agreement does not make clear that one's profile remains online after cancellation. The only mention of termination in the User Agreement states: "If you terminate your subscription, your subscription will remain active until the end of your then-current subscription period (that is, the subscription period through which you had paid prior to your termination." (Page 3, Section 4.)
31. In furtherance of its purpose to convince subscribers that more members are interested in meeting them than in fact are, Match recommends cancelled members' profiles to subscribers as compatible candidates who are likely to be interested in them based on the

criteria they've chosen, neglecting to mention when a member has cancelled their subscription altogether.

32. When a member writes to a non-subscriber who can't write back, Match sends a notification to the non-subscriber that reads, "Hurry…Find Out Who Emailed You and Connect Today!" and "Someone Has Emailed You! And She Just Might Be the One" (through an off-site e-mail address which members must provide).

33. Match derives a benefit from giving members 'matches' who can't reply because the notifications that someone has expressed interest in them induces some non-subscribers to subscribe in some cases.

34. Match sends nonsubscribing members such notification e-mails for years after cancelling.

35. Despite the emotional vulnerability inherent in the dating process, fraught as it is with fear of rejection and anxiety, Match defrauds the consumer of his/her time, labor, and emotional investment whenever a subscriber reaches out to another member by writing an e-mail and Match deliberately declines to inform the writer that that person cannot read their e-mail or respond because they have cancelled their subscription.

36. Match's policy causes humiliation and disappointment for some members of the Class who feel rejected when their e-mails get no reply.

37. Match's policy causes severe emotional distress and anxiety for some members of the Class, including those who keep writing e-mails to one member after another and never hear back from any because he/she is writing to people who've cancelled. Because the writer has no way of knowing this, he or she may experience profound personal anguish, suffering which is easily preventable by Match.

38. In furtherance of its attempt to create the appearance that inactive members are active on the Match site, Match updates member profiles with a flashing tag that reads "online now," or "active within one hour," or "active within three hours," or "active within 24 hours," or "active within two days," or "active within three days," etc., whenever a member logs in to the site, whether in order to cancel their subscription (which is excessively difficult to do), hide their profile, or in response to a notification from Match that they've been contacted by a member, who they in turn are unable to access or respond to as they are not a member and are not in receipt of the message sent to them.

39. Match induces cancelled members to log in, thereby updating the recency of activity and creating the appearance that inactive members are active, by sending notifications like those mentioned above, and by allowing non-subscribers to read and respond to e-mails for free in some instances, an d by sending notifications to blackberries that read "Someone has winked back at you" even when a member has not sent any winks at which to wink back.
40. Similarly, Match updates profiles with highlighted labels reading "online now," or "active within one hour," or "active within three hours," or "active within 24 hours," or "active within two days," or "active within three days," etc., to create the appearance members are actively using the Match site even when they are not.
41. Match misleads the consumer by knowingly and deliberately omitting information that is in its possession and can be easily provided about other members' subscription status, withholding the fact when an intended recipient is not reachable and cannot respond.
42. By omitting information that can easily be provided, Match knowingly and willfully defrauds the consumer of his/her time, labor, and emotional investment, causing the consumer to detrimentally rely on the representations set forth by Match.
43. By omitting information that can easily be provided, Match knowingly and willfully causes the writer of a message that goes ignored, to feel undesirable and rejected, willfully causing emotional harm to the consumer and social harm to society at large.
44. On any given day, upon information and belief, many thousands of members log into the Match site hoping to find someone special.
45. At any given time, a significant percentage of the e-mails a member sends can not be opened, read or responded to by the recipient.
46. At any given time, a significant percentage of the Match membership is inactive and is not reachable by e-mail or wink.
47. At any given time, a significant percentage of the Match members who log in and appear to be "online now" are not online, nor are they subscribers nor are they reachable.
48. Match negligently misrepresents the number of people who are active subscribers by updating members' profiles with "online now," or "active within one hour," or "active within three hours," or "active within 24 hours," or "active within two days," or "active within three days," etc.

49. Upon information and belief, at any given time, a substantial percentage of the members presented by Match as "online now," or "active within one hour," or "active within three hours," or "active within 24 hours," or "active within two days," or "active within three days," etc. are those of unsubscribed, terminated, or cancelled members.
50. The fraud perpetrated by Match is intended to and does affect the subscribers of Match including Mr. McGinn and other members of the Class.
51. Mr. McGinn and other members of the Class were harmed by Match's fraudulent practices. Mr. McGinn and other members of the Class paid fees to reach out to inactive members who were unreachable, who in some cases had cancelled their subscriptions or who were never subscribers, and who Match knew to be unreachable. McGinn and others in the Class wrote to inactive members in reliance on such misleading labels as "online now" or "active within one week." McGinn and others in the Class expended time, labor, and emotional investment in writing to such inactive members, and suffered monetary and emotional harm as a result.
52. Additional misleading and fraudulent practices are achieved through Match's premium "Chemistry" service which began in January of 2006 charging substantially higher subscription fees and similarly purveys profiles of members who are unable to respond because they are not "Chemistry" subscribers. Upon information and belief, tens of thousands of members of the Class are subscribers to Match's "Chemistry" service.
53. The foregoing examples of fraud are not exhaustive. Due to the complicated nature of the fraud, and the use of technology to perpetrate the fraud, discovery is necessary to uncover deceptive practices alleged by members of the Class.

FIRST CAUSE OF ACTION
<u>DECEPTIVE TRADE PRACTICES</u>

54. McGinn repeats and realleges the allegations contained in paragraphs 1 through 52 as if fully set forth herein.
55. Under 15 U.S.C. §45(a)(1), the Federal Trade Commission Act (hereafter "FTCA"), deceptive acts or practices in or affecting commerce are unlawful.

56. The FTCA is applicable to commercial transactions involving a consumer purchasing or leasing goods or services for personal, household, or family purposes. Match offers online dating service for personal use. Match members and subscribers are consumers under the statute.

57. The FTCA prohibits misrepresentations that goods or services are of particular standard, quality, or grade when they are not. Match presents profiles of inactive members who can't respond, and who Match knows can't respond, and withholds information well within its ability to provide, and deceptively labels inactive profiles as "online now" and "active within 24 hours," misleading the consumer into thinking that inactive members are of the same standard, quality and grade as active members who can respond, creating the impression of a much larger active membership than there actually is.

58. These representations are deceptive and likely to mislead consumers acting reasonably under the circumstances who, by paying subscription fees and by writing to members they believe are active members, do so in reliance on the reasonable assumption that the recipient can read their e-mail and respond. Consumers further rely on the appearance that there is a much larger active membership than there actually is. Consumers further rely on Match's deceptive representations by accepting as true that inactive members were "active within 24 hours," etc..

59. These representations are unfair practices because they are unethical, unscrupulous and financially and personally injurious to consumers.

60. McGinn and the Class were and are being misled by Match's representations to the extent, but not limited to, expending time, labor, emotional resources attempting to reach inactive members and paying monthly subscription fees for the ability to do so.

61. McGinn and the Class have suffered damages as a direct and proximate result thereof.

62. The allegations herein are violations of New York's General Business Law §349, relevant state statutes enacted by residence states of Class members, and the Uniform Deceptive Trade Practices Act.

WHEREFORE, Plaintiff Sean McGinn, individually and on behalf of all others similarly situated, demands an injunction ordering Match to cease and desist its deceptive practices and demands judgment for statutory and punitive damages as well as attorney's fees and

costs against Defendant Match, together with pre-judgment interest and demands trial by jury of all issues triable as of right by jury.

## SECOND CAUSE OF ACTION
## BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

63. McGinn repeats and realleges the allegations contained in paragraphs 1 through 62 set forth herein.
64. Match advertises and offers an online dating service for a subscription fee. Subscribers must initially agree to a user agreement. The user agreement constitutes a contract between members and Match.
65. Match entered into a valid contract with McGinn and the Class and represented its services as genuine and free from fraudulent representations.
66. Parties to the contract, including members and subscribers, understand that the contract for service is intended to provide them with access to the Match membership in exchange for subscription fees, including the ability to send e-mails to members.
67. Match subscribers pay Match to deliver their e-mails to their intended recipients. Match does not deliver the e-mails in a high percentage of cases and does not inform the writer that it has not delivered the e-mail.
68. The contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract.
69. By presenting profiles of inactive members who can not respond, and intentionally and purposefully declining to disclose the fact that these members can not respond, and deceptively labeling inactive member profiles as "active within 24 hours," Match breaches the implied covenant of good faith and fair dealing in its contract for services with McGinn and the Class.

WHEREFORE, Plaintiff Sean McGinn, individually and on behalf of all others similarly situated, demands an injunction ordering Match to cease and desist its deceptive practices and demands judgment for damages as well as attorney's fees and costs against

Defendant Match, together with pre-judgment interest and demands trial by jury of all issues triable as of right by jury.

## THIRD CAUSE OF ACTION
## FRAUD

70. McGinn repeats and realleges the allegations contained in paragraphs 1 through 69 set forth herein.
71. Match represents via the Internet that it offers a genuine online dating service that connects members with other members interested in dating and capable of receiving and replying to communications sent by them, in exchange for a monthly subscription fee.
72. These representations are material facts which are essentially the essence of the subscription agreement.
73. Match misrepresented and misrepresents to its members that inactive members were/are active members interested in a potential match by displaying subscribers and nonsubscribers in indistinguishable fashion and by inducing nonsubscribers to log in periodically and labeling them "online now" or "active within 1 hour" etc.
74. On May 30, 2009, subscriber 'ajsky65' emailed Match profile 'traehi' and assumed that 'traehi' was an active member because her profile said 'online now."
75. 'Ajsky65' received no response from 'treahi' and believed this was due to the fact that 'treahi' was not interested in him when in fact 'treahi' could not access 'ajsky65''s e-mail or profile because she had cancelled her subscription.
76. Members of the Class, including past subscribers 'traehi' and 'ajsky65', had sent e-mails to members they found attractive and, when they got no response at all, assumed that these members were patently unimpressed or indifferent toward them (their profile and photographs).
77. Thirty-three (33) Match subscribers e-mailed 'traehi" in a matter of weeks in reliance on the misrepresentation that she was an active member. 'Traehi' could not access any of the e-mails because she is not an active subscribing member. Hundreds of subscribers sent winks to 'traehi' as well.

78. Match makes these misrepresentations with the fraudulent intent to induce McGinn and the Class to rely and act upon them.
79. McGinn and the Class did in fact rely and act on these representations to the extent of, but not limited to, paying monthly subscription fees and expending time and effort and emotional resources reaching out to inactive members who could not respond and believing that inactive members were active.
80. Match knew that these representations were false and were intended to induce McGinn and the Class to rely and act on them.
81. McGinn and the Class justifiably and detrimentally relied on these representations and have suffered damages as a direct and proximate result thereof.

WHEREFORE, Plaintiff Sean McGinn, individually and on behalf of all others similarly situated, demands an injunction ordering Match to cease and desist its deceptive practices and demands judgment for statutory and punitive damages as well as attorney's fees and costs against Defendant Match, together with pre-judgment interest and demands trial by jury of all issues triable as of right by jury.

## FOURTH CAUSE OF ACTION
## <u>NEGLIGENT MISREPRESENTATION</u>

82. McGinn repeats and realleges the allegations contained in Paragraphs 1 through 81 as if fully set forth herein.
83. Match represents via the Internet that it offers a legitimate and genuine online dating service in exchange for a monthly subscription fee.
84. These representations are material facts which are essentially the essence of the subscription agreement.
85. Match represented to its members that inactive members were active members interested in a potential match and willing and able to receive and respond to communications from other members. Match also misleadingly updates inactive member profiles as "online now", etc….

86. Match made these representations with the intent to induce McGinn and the Class to rely and act upon them.
87. McGinn and the Class did in fact rely and act on these representations to the extent of, but not limited to, paying monthly subscription fees for varying periods of time and expending time and effort and emotional resources reaching out to inactive members who could not respond and accepting as true that inactive members were "active within 24 hours," etc.
88. At the time Match made these representations, Match knew these representations were false.
89. McGinn and the Class justifiably and detrimentally relied on these representations and have suffered damages as a direct and proximate result thereof.

WHEREFORE, Plaintiff Sean McGinn, individually and on behalf of all others similarly situated, demands an injunction ordering Match to cease and desist its deceptive practices and demands judgment for statutory and punitive damages as well as attorney's fees and costs against Defendant Match, together with pre-judgment interest and demands trial by jury of all issues triable as of right by jury.

## DEMAND FOR TRIAL BY JURY

Plaintiff, Sean McGinn, individually and on behalf of others similarly situated, demands a trial by jury of all issues so triable as a matter of right.


DATED: June 5, 2009

By: _____

BY: Norah Hart
TREUHAFT & ZAKARIN LLP

Attorney for the Plaintiff
1011 Avenue of the Americas, 4th Floor
New York New York 10018
(917) 539-6312

To:

Match.com, L.L.C.
1614 Sidney Baker Street
Kerryville, TX 78028-2460


National Registered Agents, Inc.
16055 Space Center Blvd., Suite 235
Houston, TX  77062