IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

BARRY BRODSKY, Individually §
and On Behalf of Others Similarly §
Situated, ET AL. §
 §
Plaintiffs, §
 § NO. 3-09-CV-2066-F-BD
VS. §
 §
MATCH.COM, LLP, ET AL. §
 §
Defendants. §

## MEMORANDUM ORDER

Defendants Match.com, LLP ("Match") and IAC/InterActiveCorp ("IAC"), the owners and operators of various websites offering online dating services, have filed a Rule 12(b)(6) motion to dismiss this putative class action alleging RICO violations and a variety of fraud and contract claims arising under Texas law. The core allegation of plaintiffs' third amended complaint is that defendants misrepresent or conceal information regarding the number and identity of users who can be reached through their websites. More particularly, plaintiffs allege that defendants advertise that they have 15 million "members," (see Plf. Third Am. Compl. at 11, ¶ 66), but do not disclose that members have limited access to online dating services unless they pay a fee to become "subscribers." (See id. at 6, ¶¶ 30-31).[1] Nor do defendants distinguish member profiles from subscriber profiles on their websites. (See id. at 23, ¶ 165 & 27, ¶ 180). In addition to these material

---

[1] "Members" are non-paying users who may create profiles for the website, browse other user profiles, and receive notice that fee-paying "subscribers" have sent them an email. (See Plf. Third Am. Compl. at 6-7, ¶¶ 24, 30). However, in order to view the profile of the subscriber who sent the email, read the email, or communicate with the subscriber, the member must subscribe to defendants' online dating service by paying a fee. (See id. at 6, ¶ 24). According to plaintiffs, fewer than 1.4 million of defendants' members are paying subscribers. (See id. at 11, ¶ 66).

omissions of fact, plaintiffs contend that the following false and misleading statements appear on the Match.com website:

- Receiving email is free; you can receive responses even if you have never subscribed to Match.com. (*Id.* at 6, ¶ 27);

- When you resign your membership, we immediately hide your profile and photos from other members. (*Id.* at 7, ¶ 41).

Plaintiffs allege that the first statement falsely implies that subscribers can communicate with millions of members by email, (*see id.* at 7, ¶ 35), and that the second statement obfuscates the difference between "resigning a membership" and "cancelling a subscription." (*Id.* at 8, ¶¶ 44, 46). In fact, profiles of subscribers who merely cancel their subscriptions are not hidden on the website which, according to plaintiffs, is done to artificially inflate the number of apparent users of defendants' online dating services. (*See id.* at 8, ¶ 46). Plaintiffs also accuse defendants of fraudulently labeling the profiles of non-paying members to say "Online Now," thereby misleading subscribers "as to how many members are active subscribers." (*Id.* at 7, ¶ 38). In addition to these fraud-based claims, which are pled as violations of the federal RICO statute, the Texas DTPA, and common law fraud, fraudulent inducement, and negligent misrepresentation, plaintiffs sue for breach of contract, breach of the implied duty of good faith and fair dealing, and violating their right to privacy by misappropriating their likeness to benefit another. The case is before the court on a Rule 12(b)(6) motion to dismiss. The motion has been briefed by the parties and is ripe for determination.

A district court may dismiss a complaint for failure to state a claim "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Jackson v. City of Beaumont Police Dept.*, 958 F.2d 616, 618 (5th Cir. 1992), *quoting Barrientos v. Reliance Standard Life Ins. Co.*, 911 F.2d 1115, 1116 (5th Cir. 1990), *cert. denied*, 111 S.Ct. 795 (1991). To survive dismissal, the plaintiff must plead "enough facts to state a claim to relief that is

plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.*, 127 S.Ct. at 1965. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*, 129 S.Ct. at 1950. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id., quoting* FED. R. CIV. P. 8(a)(2).

Cases involving fraud are subject to more stringent pleading requirements. In such cases, "a party must state with particularity the circumstances constituting fraud[.]" FED. R. CIV. P. 9(b). At a minimum, this requires the plaintiff to identify the "who, what, when, where, and how" of the alleged fraud. *See Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir.), *cert. denied*, 118 S.Ct. 412 (1997), *quoting Tuchman v. DSC Communications, Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994), *reh'g denied*, 20 F.3d 1172 (5th Cir. 1994). Although fraud pleadings may be based on information and belief if certain facts are peculiarly within the knowledge of the opposing party, "this luxury must not be mistaken for license to base claims of fraud on speculation and conclusory allegations." *Tuchman*, 14 F.3d at 1068, *quoting Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (internal quotations omitted).

One of the grounds for dismissal urged by defendants is that plaintiffs have not pled reliance -- an essential element of their fraud, fraudulent inducement, negligent misrepresentation, and DTPA claims. Plaintiffs tacitly concede that their most recent complaint alleges no facts to support the

conclusory assertion that they "relied on defendants' false representations in making their decision to subscribe and to write e-mails to members who could not read them." (*See* Plf. Third Am. Compl. at 33, ¶ 226). Rather, plaintiffs argue that there is a "presumption of reliance" in fraud cases involving both affirmative misrepresentations and a failure to disclose. (*See* Plf. Resp. Br. at 5-7, 13-14, 17).

It is well-settled that actual reliance is a necessary element of common law fraud under Texas law. *See Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 341 (5th Cir. 2008), *citing Johnson & Johnson Medical, Inc. v. Sanchez*, 924 S.W.2d 925, 929-30 (Tex. 1996) (to state a claim for common law fraud under Texas law, plaintiff must allege that a material misrepresentation was made, was either known to be false or asserted without knowledge of the truth when made, was intended to be acted upon, was relied upon, and caused injury). This is true regardless of whether the fraud is by affirmative misrepresentation or by nondisclosure. *See Celanese Corp. v. Coastal Water Authority*, 475 F.Supp.2d 623, 637-38 (S.D. Tex. 2007), *citing Schlumberger Technology Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997). Reliance is also an essential element of fraudulent inducement, negligent misrepresentation, and violations of the DTPA. *See, e.g. Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 56 (Tex. 2008) (fraudulent inducement); *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002) (negligent misrepresentation and DTPA). Other than their conclusory allegations of reliance, plaintiffs allege nothing to suggest that they actually relied on any false representation in deciding to become fee-paying subscribers of defendants' online dating services.

Recognizing this pleading deficiency, plaintiffs argue that proof of reliance is not required in fraud cases involving primarily a failure to disclose. (*See* Plf. Resp. Br. at 5). In *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), the Supreme

Court held that reliance in a federal securities fraud action may be established by showing that the facts withheld are material "in the sense that a reasonable investor might have considered them important in the making of [a] decision." *Id.*, 92 S.Ct. at 1472. However, subsequent cases make clear that this presumption of reliance does not apply to "mixed claims" alleging both affirmative misrepresentations and material omissions. *See Akin v. Q-L Investments, Inc.*, 959 F.2d 521, 529 (5th Cir. 1992); *Krogman v. Sterritt*, 202 F.R.D. 467, 478-79 (N.D. Tex. 2001). Nor is the presumption widely applied outside the context of federal securities fraud litigation. *See Gyarmathy & Assoc., Inc. v. TIG Ins. Co.*, No. 3-02-CV-1245-N, 2003 WL 21339279 at *3, n.6 (N.D. Tex. Jun. 3, 2003) (rejecting application of *Affiliated Ute* in case involving claims of civil RICO, violations of the Texas DTPA, fraud, negligent misrepresentation, breach of contract, and breach of duty of good faith and fair dealing). Because the *Affiliated Ute* presumption is inapplicable here, the failure to plead facts that establish reliance is fatal to plaintiffs' claims for fraud, fraudulent inducement, negligent misrepresentation, and violations of the DTPA. These claims are dismissed with prejudice.[2]

The court denies without prejudice the remainder of defendants' Rule 12(b)(6) motion. Without suggesting a view of whether dismissal may be proper in another procedural context, such as a motion for summary judgment, the parties have not adequately briefed the legal issues surrounding plaintiffs' RICO claim. Nor is the court comfortable dismissing plaintiffs' contract-

---

[2] Ordinarily, the court would allow plaintiffs to amend their complaint in an attempt to cure the pleading defects identified by defendants. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (court should allow plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal"). However, plaintiffs have already amended their complaint *three times*. Because plaintiffs have presumably stated their best case after "three bites at the apple," any further attempts to cure these pleading deficiencies would be futile and cause unnecessary delay. *See Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

based claims at the pleading stage.[3] Defendants may reurge their arguments for dismissal of these claims in a motion for summary judgment.

## CONCLUSION

Defendants' Rule 12(b)(6) motion to dismiss [Doc. #48] is granted in part and denied in part. The motion is granted with respect to plaintiffs' claims for fraud, fraudulent inducement, negligent misrepresentation, and violations of the DTPA. Those claims are dismissed with prejudice. In all other respects, the motion is denied.

Defendants may file a motion for summary judgment with respect to plaintiffs' RICO claim and contract-based claims within 60 days from the date of this order. The court will enter a summary judgment briefing schedule after defendants file their motion. Upon request, the court may authorize plaintiffs to conduct limited discovery in order to respond to the grounds raised by defendants in their motion for summary judgment. An opposed motion for leave to conduct discovery must comply with the requirements of the Standing Order on Non-Dispositive Motions filed on November 23, 2009.

SO ORDERED.

---

[3] Defendants rely on the contents of their website, including the "Terms of Use Agreement," to support the dismissal of plaintiffs' contract-based claims. However, it is unclear whether such materials constitute "matters outside the pleadings" that may not be considered by the court in ruling on a Rule 12(b)(6) motion. *See General Retail Services, Inc. v. Wireless Toyz Franchise, LLC*, 255 Fed.Appx. 775, 785, 2007 WL 2909565 at *8 (5th Cir. Oct. 5, 2007), *quoting* 5C C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE § 1366 (3d ed. 2004) (describing "matters outside the pleadings" to include "written or oral evidence introduced in support of or in opposition to the motion challenging the pleading that provides some substantiation for and does not merely reiterate what is said in the pleadings," but not "exhibits that are attached to the pleadings, matters of which the district court can take judicial notice, and items of unquestioned authenticity that are referred to in the challenged pleading and are 'central' or 'integral' to the pleader's claim for relief"); *Corbis Corp. v. Integrity Wealth Management, Inc.*, No. C-09-708-MJP, 2009 WL 3835976 at *2 n.1 (W.D. Wash. Nov. 16, 2009) (terms of license agreement for use of images appearing on website were "factual matters outside the pleadings which are inappropriate to determination of Rule 12(b)(6) motion"). In an abundance of caution, the court determines that defendants should reurge their arguments for dismissal of these claims in the context of a Rule 56 motion for summary judgment.

DATED: September 30, 2010.

JEFF KAPLAN
UNITED STATES MAGISTRATE JUDGE